All yours. Thank you. Good afternoon. May it please the court. My name is Amanda Weaver for petitioner Jacques Ilunga-Kabamba. I'd like to reserve about five minutes of my time for rebuttal and I'll keep an eye on my own time. Jacques comes before this court having obtained asylee status after fleeing from the Democratic Republic of the Congo following torture at the hands of officials under the Kabilas and in the footsteps of his father, Bishop Agui Kabamba, who was beaten and raped by officials in the DRC. This court should grant Jacques petition for review for two independently sufficient reasons. First, this court should correct the IJ's and BIA's error in determining Jacques' 2015 conviction for conspiracy to commit possession of marijuana for sale was an aggravated felony. And second, this court should rectify the IJ and BIA's error in ignoring substantial evidence compelling the conclusion that Jacques is at risk of future torture and therefore eligible for at least deferral of removal under the Convention Against Torture, if not withholding of removal under the CAT. I'd like to begin by speaking about conspiracy to commit possession of marijuana for sale and the fact that it is not an aggravated felony under 8 U.S.C. 1101-A43-B-OR-U. And I appreciate the court asking the parties to focus on the laterality aspect of the overbreadth of conspiracy because it is incisively dispositive here. In addition to the aspect that was also brief concerning. Can I interrupt? Yes, you're on. The government has asked us to remand on that point. Why shouldn't we remand? Waiver and the fact that the federal generic definition has already been decided being the two main points, your honor, and allow me to explain. First, we fully briefed the federal generic definition of conspiracy. And not only did the government properly identify that this court reviews questions of law de novo on page 121 of its answering brief, but also states that this court itself applies the categorical approach when determining the federal generic definition, considering the fact that this court uses de novo review to look at questions of law. Second, the federal generic definition is already decided. The government's other cited cases are an apposite here. Specifically, United States v. Brown, which this court included in its order, explicitly addresses the generic federal definition as quoted and does not cabinet solely to sentencing in contravention to what the government has argued before this court. Specifically, it states under federal law, a defendant cannot be convicted of conspiracy. If the only alleged co-conspirator is a federal agent or informant. In addition, I see that the government also cited Ho-Sang Yim v. Barr, which does not apply because the generic federal definition already exists for laterality. So the BIA would be required to adopt that anyway, and the BIA did not supply its own definition. This court can certainly supply de novo interpretation of a statute in the absence of an agency pronouncement. Furthermore, Negussi v. Holder relates to whether persecution was coerced or otherwise a product of duress, which the United States Supreme Court found was more appropriate for the BIA to address as a case-by-case determination based on what they're seeing with immigration cases as two facts on the ground. So here, because this issue concerning laterality of conspiracy is properly before this court. It is undoubtedly the fact that underground versus United States a defendant cannot be convicted of conspiracy. If the only alleged co-conspirator is a federal agent or informant. Arizona, by contrast. Can I interrupt for just a minute? Now, I take it from the government's request that we remand that the government is not on the other hand. I'm even if it's a pure question of law. We really don't have much briefing on this question. I mean the best briefing I've got is in the government's 28J letter. Potentially a complicated question. And even if it's not a Ventura remand intensive fact, I wouldn't mind a little help from the BIA before we weighed into this one. Respectfully, Your Honor, the briefing that we've undertaken, I think does supply the proper framework for decision here as well as the cases that are before this court that under Aguilar v. Barr, if a state statute exceeds the generic definition, that's the case. If it expressly defines a crime more broadly than the federal generic definition, which. Yes, but the question is what is the generic definition? And I'm not sure I know exactly what the generic definition is. There's an argument that the generic definition excludes unilateral conspiracy, but there's at least a plausible argument that goes the other way. In terms of the federal generic definition, Your Honor? Yes. That I would identify that Brown v. United States does explicitly state that the federal generic definition of conspiracy is bilateral as compared to the Washington conspiracy statute when I was comparing the two, and it cites back to Lowe and then Escobar v. DeBrite, which are not cabined specifically to sentencing statutes that they're generally addressing the federal generic definition of conspiracy as to laterality specifically. And so given that being the case that there is one at least one and two that have been cited before this court, state that Arizona statute or the Arizona conspiracy statute is a unilateral conspiracy. Therefore, under the framework that this court considers for whether this statute of conspiracy is overbroad in Arizona compared to the federal statute, at least to the laterality issue, I would submit that there's enough evidence and argument in the record for this court to decide that as the de novo issue of law or call for supplemental briefing if they think it appropriate. However, this case has already been fully briefed considering the additional plain language argument that has been submitted and supportive by case law concerning the fact that a person who is part of a conspiracy need not be party to the underlying agreement. And so even if this court were to consider believe that it did not have enough information before it as to the laterality aspect, I would submit there's enough information for it to decide as to the party to the underlying agreement to be able to decide at this point without remand as a de novo issue because the state. I guess this goes to both the who's a party to the agreement and is it bilateral or unilateral either of those. One was at least brief, but neither of them as far as I can tell was presented to the board and we only have jurisdiction to consider an issue that was exhausted before the board. So can you address the question of exhaustion? Yes, Your Honor. Thank you. The fact that it was it was DHS's burden to prove by clear and convincing evidence the fact that Jacques was removable as charged and here the court did do or the immigration judge did do a full analysis of aggravated felony and to what extent 13-3405 applies the court just did not look at or did not include conspiracy 13-1003 despite the fact that evidence was in the record for its consideration regarding conspiracy as to his charging documents and the the BIA looked at the IJ's opinion and had an opportunity to pass on the issue. Furthermore, this court considers the exhaustion doctrine liberally, especially where the prisoner is or where the petitioner is pro se like Jacques was here. He was represented at certain points throughout the IJ removal hearings, but was not represented during his BIA appeal and here the requirement is that the BIA must have had the opportunity to pass on the issue which they did here. They looked at the IJ's opinion and said that it was proper for the reasons that and legal precedent that it relied on and Jacques also identified the basis for his challenge to the BIA as required by Ren V Holder wherein he stated that the IJ erred in finding him removable and properly identified that it is the burden of DHS to establish by clear and convincing evidence that respondent is removable as charged. The IJ that's fair enough as far as it goes, but I mean he's challenging the finding that he's removable and he might not be removable because you know, he wasn't actually convicted of an offense or the offense was unconstitutional or the offense was not a categorical match for the reason you gave or the offense was not a categorical match for the different reasons suggested in our briefing order. I mean, you really think that just because just saying I challenge the finding of removability is enough to put the board on notice that it needs to consider all of those different possible theories that might be presented? Well, whether or not it is enough to put them on notice. It appears that they did consider everything because they looked at the fact that the IJ used legal precedent in his argument and specifically stated the fact that the IJ's opinion was correct for the reasons stated in his decision. Furthermore, the DHS, whose burden it was to prove that Jacques was removable in the first case, submitted a response to the BIA that was barely a page long. And so to that end, I think that that factors in to considering whether or not Jacques exhausted his administrative remedies as he did here. And I'd like to also speak very briefly about his eligibility for relief under the CAT, but as I see that I have about five minutes, I'd like to reserve the remainder of that on rebuttal. So did you wish to address the CAT at this point or did you want to save that? I will save that. Thank you, Your Honor. Well, you know, I'd prefer that we do this in the ordinary way, meaning you're supposed to go first with the argument and so the government can respond. You don't get to make it the first time around in the rebuttal. So if you could at least briefly address your CAT argument so the government knows what it's supposed to respond to.  Thank you, Your Honor. The fact that Jacques is eligible for relief under the CAT because he met his burden to establish likelihood of future torture. This is the substantial evidence standard for factual findings such that if any reasonable adjudicator would be compelled to conclude to the contrary that administrative findings of fact are not conclusive. Here, the IJ refused to credit the fact that Jacques was tortured and found the fact that he had experienced torture as a highly relevant factor in assessing future torture, but also refused to credit his father's, his father Agui's testimony who testified at length to known country conditions and ignored other evidence in the record concerning the 2016 and 2017 State Department Human Rights Report. Okay. Thank you. Thank you. Thank you. Ms. Bird. Yes, may it please the court, Sarah Bird on behalf of the respondent, the Attorney General. As to the issues that were briefed, this court should deny the petition for review because the Arizona Conspiracy Statute is a categorical match to the generic definition of conspiracy set forth by this court in Garcia-Santana and because substantial evidence supports the agency's determination that petitioner was not eligible for protection under the Convention Against Torture. Now, as to the issue that was raised by this court's order recently with regard to whether a bilateral agreement is required for the generic definition of conspiracy under the Immigration and Nationality Act, the government has asked for remand on that issue. Now, as an initial matter, we do argue that it was not exhausted and it was waived in the opening brief, but to the extent that this court feels that it, that issue needs to be reached in this case in order to correctly decide the aggravated felony issue, we would ask for remand because it's well established that the Board of Immigration Appeals has, is entitled to deference as to its determination of or ambiguous term in the Immigration and Nationality Act and the term conspiracy is clearly ambiguous given all the discussion we're having about what it means. Can I just ask you, you said to the extent that we think it was properly before us, we should remand it. Are you saying, I mean, your motion just said, please remand, or are you now saying you only want us to remand if we think it's been exhausted and otherwise you want to? Yes, I guess if you think, I think that the court can decide this issue based on the briefs and Garcia-Santana controls. Garcia-Santana sets out this court's generic definition and it controls the issues that were raised in the briefs, but we took that order that the court said, please be prepared to discuss this issue as meaning that the court found it necessary to consider this issue. And if the court finds it necessary to consider bilateral versus unilateral, we're saying actually the board should get the chance to consider that in the first instance. Your motion just said, we want to remand and so now you're clarifying that that was really only a conditional motion. No, I think it would be beneficial to remand this case if the unilateral issue is concerning to the court. That issue needs to be decided by the board in the first instance and that does go to the exhaustion issue because it was not raised. I mean, we argued in our answering brief that nothing about the conspiracy being overbroad was exhausted. So neither the issue raised by petitioner and the opening brief nor the one identified by this court were exhausted to the board, but in particular, that's a question in a way for the board. As you undoubtedly know, exhaustion in front of the board for a pro se petitioner is treated differently from exhaustion when represented by a lawyer that sometimes works out very badly for people who have bad lawyers, but I think it's up to the board in a way to decide whether or not the question is presented. It was clearly a challenge to the board as to at least the board addressed the question as to whether or not this was an aggravated felony and said they agreed with the IJ, right? That's right. And this court does construe more liberally where someone is pro se and that's why while we raised the exhaustion issue, we also went ahead and engaged with the other issue. I'd like to... And as to whether, assuming for the moment that it's sufficiently in front of us that we should remand, I have to say I agree with you that we need to remand in the sense that while we owe no deference to the board's interpretation of Arizona law, we do owe some deference to it in the interpretation of the federal law in terms of what's an aggravated felony. That's right, your honor. And at this point with regard, the dispute over Arizona law had to do with the issue raised by petitioner in the opening brief, but as to the unilateral, there's no dispute. Arizona criminalizes unilateral conspiracies. What is unclear and ambiguous is whether the federal generic definition in the Immigration and Nationality Act encompasses unilateral conspiracies and Brown is definitely not controlling as to that issue. I want to make that clear. Brown was a sentencing guidelines case that was looking at whether something was a controlled substance offense for purposes of the sentencing guideline. So Brown was specifically looking at the federal definition of conspiracy in 21 USC 846. And 21 USC 846, and if you trace back Brown's citations, of course, they gave abroad the federal definition requires bilateral, but if you trace the citations low and or Ortega, it's that specific federal statute within the Controlled Substance Act. Now that statute was considered and rejected by this court in Garcia-Santana. In Garcia-Santana, the federal government, the board had set forth, had gone with the definition of conspiracy that aligned with the statute issue in Brown and the common law, which requires no overt act, but does require a bilateral agreement. And that was what the board had said in Richardson and Garcia-Santana rejected that and instead this court said the generic definition is not defined by 21 USC 846, specifically cited and rejected that statute as defining the immigration and Nationality Act's generic definition of conspiracy and instead went with the model penal code and the majority of states, which the model penal code and the majority of states require an overt act, but encompassed unilateral agreements. Now Garcia-Santana didn't specifically address the unilateral issue. Speaking only for myself. I have to say that's enough to tell me that I can't make up my mind without some assistance from the BIA on that point. Well, and we would that's why we request remand and if the court did for some reason want to decide it, we would ask for supplemental briefing because as you pointed out Judge Fletcher, it hasn't really been briefed, but in my 28 J letter is pretty good. Well, the 28 J letter cites Rivera-Constantino, which also shows this distinction between Brown going one route for conspiracy and Garcia-Santana and the immigration and Nationality Act generic definition goes a different route and under the logic of Garcia-Santana while it doesn't address unilateral convictions, it's going with the majority of states in the model penal code. So under that logic unilateral conviction or conspiracies would come in, but it's just it's ambiguous and the board should have the opportunity to address it in the first instance because it is a term in the immigration and Nationality Act that's under the purview of the board. Just like perjury was in Yim just last year. This Can I ask you about CAP? Yes, please. Okay, the board writes with respect to CAP. There is no indication and I'm just reading from the last paragraph of the board's decision. The third sentence, there is no indication dot dot dot that DRC, that's a Democratic Republic of Congo, DRC government officials or any other individuals acting in official capacity would be interested in him at this time. Well, there is an indication. I mean the father very specifically testified that were he to go back, he would be identified as the son of the minister and that he may well be killed. So the BIA is wrong when it says there's no indication. Does that mean that they're just not that they're just ignoring that piece of evidence? Respectfully, I would disagree because the father testified as to his opinion, but he did not provide any factual evidence behind that. And so wait a minute. If this were someone who's who are an expert in the country or knew the country would we would treat that as evidence. Here's a man who is a refugee from the country. He's been back several times to that country and he says this is what happens. That sounds like evidence to me. He said that that's what he thinks would happen to his son but what he also said was that he has been back multiple times and no one has threatened or expressed any interest in him or his son. So what the board. No, he says I'm safe because I am an American citizen. He says my son is not an American citizen and he would not be safe. And that's that is his opinion. But the board is not required to accept his opinion. Well, he's making inferences. I understand that also but the board says more than that. It doesn't say we reject his view of the matter. We don't regard this as convincing evidence. We regard this as speculation. They say there is no indication which leads me to think which leads me to think that they that they're not paying any attention to it. And I think they need to evaluate that question. I can see why you might interpret it that way, but I don't think that's fair to the board. I think that what they're saying is that in 15 years, no, there's no evidence that anyone has threatened the son and they point out that he hasn't there in the sentence before that. There's no indication that there have been any threats of harm since his departure in 2003 or that they have any interest in him in this time. And there's nothing that his father said that contravenes that. So his father said, yes, I've been a well, what about the country conditions reports, which which he presented a lot of evidence that even apart from the issue with his father and his relationship to him that returning people who are being returned after having sought asylum elsewhere are sort of singled out. And there was the one study that said, you know, a majority of the people studied in that that fell into that category were arrested or tortured. Why? I guess I have the same question that Judge Fletcher did. Shouldn't they have at least mentioned that before asserting that there's no indication that someone like him would come to the attention or would that the authorities would be interested in him? Right. Well, with regard to those studies, I agree. There's disturbing evidence as to the country conditions, but his burden of proof for convention against torture is to show that he's more likely than not to be singled out for torture and the evidence indicated and the immigration judge discusses this, I believe that some people, yeah, this is on administrative record page 60, the immigration judge says addresses those reports about failed asylum seekers who return, but it looks like the article suggests that yes, some of them are detained, but most of them are detained and then bribed or a bribe is requested. So I'm not saying that's right. I'm not saying that's good, but that's not torture. That's bribing. And then it also, the articles also suggested that the real target is political dissidence and petitioner here has never been a political dissident. I guess that this is a legal question, not a factual one. Is it the government's view that if a claimant shows that he would be subject to torture by the government of a country, but the evidence establishes that he might be able to avoid it by paying a bribe to an official that he is not entitled to count relief because it because can avoid torture by paying bribes. I think that goes to the more likely than not standard. So it doesn't, you can't say I would be more likely than not except that if I pay five dollars, I won't be it's going to depend. It's going to be very fact-specific. This is a substantial evidence factual inference analysis. So if the bribe is something that he simply couldn't pay, it would so depend on the hypotheticals and the facts. So I see what you're saying that you shouldn't have to pay a bribe to avoid torture, but it's not clear from the country conditions evidence that that's the scenario. Instead, it seems to be what the IJ was thinking. I mean, I guess I'm asking you. So are you defending that aspect of the IJ's reasoning that you're not more likely to a person who can't avoid torture by paying a bribe Well, the IJ doesn't say that. They say that they are detained and so it's a multiple step. That's one of the problems is that his claim rests on multiple speculative leaps. And so the but yes, I am saying that the IJ says look what the this country conditions evidence says is that people that return get detained by officials until they pay a bribe and then they get released and that doesn't establish a likelihood that this particular individual will be targeted and then tortured because his his claim depends on these hypothetical links in a chain and he has to establish that each link in the chain is more likely than not. And he simply didn't do that. You need an overall more likely than not. You need an overall more likely than not. But as to the bribing what the IJ writes is the article suggests that some deportees are able to bribe their way out. We don't know what some means but it certainly means less than all but I'd like to go back to the previous paragraph in the IJ's opinion. It's the last sentence in that previous paragraph where the IJ makes what I view is the same mistake the I the BIA made and I'm just reading the I right IJ rights given the lack of evidence suggesting that the respondent is personally at risk of torture in the DRC the court finds da da da. Well, there was evidence that IJ may choose to discount it because oh dad, what do you know? You know, this is just speculation, but there was evidence and neither the IJ nor the BIA reads one word about the father's testimony. Well, the IJ does summarize the father's testimony elsewhere in his decision. Yeah, but he doesn't talk about the testimony that's relevant to the risk to the son. I think in this case the dad was able to testify as to his experience but he did not have any basis for making a conclusion as to eligibility for cat. That's not his job. Eligibility for cat, that's a legal determination. Yeah, but if you're saying he had no basis for assessing the danger to his son, that has to be wrong. I mean, he clearly has some basis for that. We may And he explained his basis was that I returned safely. It's no problem for me, but I think that it's different for him because he's not a US citizen and I am but he didn't point to any anyone in similar circumstance who like his son had experienced that. Good, make that argument to the IJ, make that argument to the BIA. I'd like the BIA to address the argument. Address the evidence, not pretend that the evidence isn't there. Anyway, okay. Thank you, Your Honor. Any further questions from the bench? No, thank you. Ms. Weaver, you saved some time. Thank you, Your Honor. I'd like to address one quick point with each of the two main versus United States from a 50,000 foot view. Brown is approaching the definition of conspiracy from the exact same framework that we're doing. So here, wherein you're using the categorical approach to look at what the federal generic definition is. And on page 1048 in Brown, it specifically states that under federal law, a defendant cannot be convicted of conspiracy. If the only alleged co-conspirator is a federal agent or informant. That's a very broad statement of fact as it relates to the federal generic definition of conspiracy. Moreover, I understand, Judge Fletcher, that you indicated that it would be nice to have the IJ and BIA pipe in. However, that's not necessary here, specifically under Ho-Sang Yim versus Barr. At page 1082, this court states, we may not apply the interpretation of the statute we think best if the BIA had spoken. However, as we would without an agency pronouncement. So without an agency pronouncement, this court is free to do so and indeed make sense to do so based on the fact that this is a de novo issue under a de novo standard. Let me respond to that. I understand that we don't owe any deference at all to the BIA when it interprets state law. Do we owe it no deference when it interprets the federal law? Given the fact that the BIA has not spoken here, I understand Barr, Ho-Sang Yim v. Barr to indicate the fact that if the BIA hasn't spoken and doesn't have a ruling, then this court need not provide deference in a vacuum, in absence of anything. Are we in some fashion prevented from asking their view before we go forward? Even if we might have the will to go forward? I don't think that this court is prevented from doing so, Your Honor, and I think that based on the experience that this court has with de novo review, it would make the most sense to keep purview over this case, particularly given the fact that the conspiracy statutes have been fully briefed to this point. Additionally, as to the CAT, I understand that the government and the IJ focused on the fact that some people are able to bribe their way out However, I'd like to focus in on the fact that torture means that public officials are acquiescing to its scheme. And if you have public officials who are stopping failed asylum seekers at the airport and requiring that they bribe their way out, that as a matter of law means that the officials are acquiescing in the scheme of torture, which makes it an impermissible determination under the CAT that because Jacques has not been committed, has not committed an aggravated felony. He's therefore able as a remedy to not have his asylee status canceled, available for withholding of removal and under withholding of removal under the CAT. However, still under, even if this court, to speak to Judge Miller's point, did not have jurisdiction over the aggravated felony claim, it still has jurisdiction over deferral of removal under the CAT. And if there are no further questions, thank you. Thank you very much. Now, I have a question. It doesn't show up on my, on my day sheet here. Are you doing this as a pro bono? I am, Your Honor. Okay. Well, I thought that was so, and I wanted to do as I normally do, or as we normally do, the court normally does, to thank you very much. I mean, we very much appreciate pro bono lawyers who step in to do this. It greatly helps us in our deliberations. And I would like to thank you. I'll thank the government, but not in the same sense because you are getting paid. But I think both of you for your helpful arguments. Thank you, Your Honor. Ilunga Kambamba versus Wilkinson, submitted for decision.
judges: W. Fletcher, Miller, Hunsaker